

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOHN M. TORRENCE | Case Number: 2316-CV00641 |
|---|---|
| Plaintiff/Petitioner:<br>NAZARETH ENTERPRISES, INC.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS SCOTT HIATT<br>1000 WALNUT STREET<br>SUITE 1400<br>KANSAS CITY, MO 64106 |
| Defendant/Respondent:<br>RCS - STATE LINE, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Real Estate Actions | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** RCS - STATE LINE, LLC
    **Alias:**
C/O RA: CT CORPORATION SYSTEMS
120 S. CENTRAL AVE.
CLAYTON, MO 63105



*COURT SEAL OF JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

10-JAN-2023
    Date                                    Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).
☐ other _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

*(Seal)*    **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____    _____
                     Date                    Notary Public

**Sheriff's Fees**
| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 23-SMCC-289   1  of  1   Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:23-cv-00101-SRB   Document 1-2   Filed 02/13/23   Page 1 of 14

# SUMMONS/GARNISHMENT SERVICE PACKETS
# ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

6/2020

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| **NAZARETH ENTERPRISES, INC.,** | ) | |
| | ) | |
| and | ) | |
| | ) | **Case No:** |
| **NAZARETH STATE LINE, LLC,** | ) | |
| | ) | **Division:** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **RCS – STATE LINE, LLC,** | ) | |
| Serve Registered Agent: | ) | |
| C T Corporation Systems | ) | |
| 120 S. Central Ave. | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JONES LANG LASALLE AMERICAS, INC.,** | ) | |
| Serve Registered Agent: | ) | |
| United Agent Group, Inc. | ) | |
| 12747 Olive Blvd, Suite 300 | ) | |
| St. Louis, MO 63141 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JONES LANG LASALLE BROKERAGE, INC.,** | ) | |
| Serve Registered Agent: | ) | |
| United Agent Group, Inc. | ) | |
| 12747 Olive Blvd, Suite 300 | ) | |
| St. Louis, MO 63141 | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION FOR DAMAGES

Plaintiffs Nazareth Enterprises, Inc. ("Nazareth") and Nazareth Stateline Line, LLC ("Nazareth State Line") (collectively, "Plaintiffs"), by and through their undersigned counsel of record, brings the following causes of action against Defendants RCS – State Line, LLC ("RCS

State Line"), Jones Lang LaSalle Americas, Inc. ("JLL Americas"), and Jones Lang LaSalle Brokerage, Inc. ("JLL Broker") (collectively, "Defendants"):

**PARTIES, JURISDICTION, AND VENUE**

1. Nazareth is a California corporation in good standing with the State of Missouri.

2. Nazareth State Line is a California limited liability company in good standing with the State of Missouri.

3. RCS State Line is a Colorado limited liability company in good standing with the State of Missouri which may be served through its registered agent C T Corporation System at 120 S Central Avenue, Clayton, Missouri 63105.

4. JLL Americas is a Maryland corporation in good standing with the State of Missouri which may be served through its registered agent United Agent Group, Inc. at 12747 Olive Blvd, Suite 300, St. Louis, MO 63141.

5. JLL Broker is a Texas corporation in good standing with the State of Missouri which may be served through its registered agent United Agent Group, Inc. at 12747 Olive Blvd, Suite 300, St. Louis, MO 63141.

6. JLL Americas and JLL Broker are collectively referred to as "JLL."

7. Jurisdiction and venue are proper in this State and Court because the property at issue is located in this State and County and the alleged misrepresentations and tortious actions were made in this State and County.

**FACTS COMMON TO ALL ALLEGATIONS**

8. This action arises out of certain misrepresentations made by Defendants to Nazareth in connection with Nazareth's purchase of the real property located at 9201 State Line Road, Kansas City, Missouri (the "Property").

2

Electronically Filed - Jackson - Kansas City - December 27, 2022 - 05:22 PM

9. In the Fall of 2021, Nazareth began looking for properties to purchase as part of a 1031 Exchange.

10. Highly summarized, a 1031 Exchange is a "like-kind exchange" where a property owner is able to defer payment of capital gains on the sale of real property if the proceeds from the sale of the real property are used to purchase new real property.

11. There are tight time limitations to get this tax-deferred treatment, with the party looking to take advantage of the 1031 Exchange being required to: (1) designate the property that will be purchased within 45 days of selling real property; and (2) the designated property must close within 180 days of the sale of the old property.

12. If these time limitations aren't followed then the buyer has to pay capital gains taxes on the property sold.

13. In the fall of 2021, Nazareth was engaging in a 1031 Exchange and was looking for properties to purchase.

14. To meet the 45-day designation period and 180-day closing period, Nazareth needed to move quickly to close this deal or it would face significant tax consequences from a failed 1031 Exchange.

15. Nazareth came across the Property by reviewing an Offering Memorandum put together by JLL.

16. Upon information and belief, JLL was the seller's agent, broker, and/or representative in connection with the sale of the Property, and had a pecuniary interest in the outcome of the transaction at issue in this lawsuit.

17. At all times relevant, JLL had both actual and apparent authority to act on behalf of and bind RCS Stateline in connection with the transaction.

3

18. Of note, and relevant to this lawsuit and Nazareth's interests and rationale in purchasing the Property, the Offering Memorandum represented the following:

   a. The Property was under a long-term lease with Burns and McDonnell on a "Net" lease which meant that the landlord had minimal upkeep and maintenance responsibilities for the Property.

   b. There had been recent upgrades to the HVAC system, roof, and parking garage which meant that the new property's owner's responsibilities for additional out-of-pocket expenses in maintaining the property or making capital improvements would be minimal.

   c. There was remaining landlord work of $300,000 in parking garage repairs that were in progress and would be completed and closed out by the end of the year with a total of $663,000 in recent and ongoing parking garage refurbishments having been performed to date.[1]

19. In reliance on the representations in this Offering Memorandum, Nazareth Enterprises and RCS State Line entered into the Purchase Agreement for the Property dated December 8, 2021 (the "Purchase Agreement").

20. Prior to Nazareth Enterprises entering into the Purchase Agreement, Nazareth Enterprises had no ability to access any documents or other information about the Property, the Lease, the alleged improvements to the Property that had been performed, or the ability to inspect the Property.

---

[1] This reference to $663,000 in recent and ongoing parking garage refurbishments was highlighted and bolded throughout the Offering Memorandum.

SPR 18005132.1

21. Instead, the Purchase Agreement delineated the terms and conditions by which Nazareth Enterprises would be able to review documents related to the Property and inspect the Property.

22. The Purchase Agreement also had a 45-day contingency period, with the closing immediately after the expiration of this contingency period.

23. This 45-day contingency period expired on January 25, 2022 at 2:00 p.m.

24. To meet the 1031 Exchange deadline, Nazareth Enterprises would need to close on the purchase of the property in late January 2022, so the closing and contingency period established in the Purchase Agreement could not be extended without Nazareth Enterprises losing the 1031 Exchange.

25. Immediately after executing the Purchase Agreement, Nazareth Enterprises requested a series of documents related to the Property from JLL, including, but not limited to, lease agreements, copies of all inspections, and documents regarding all work that had been performed on the Property by RCS State Line or its predecessors.

26. While some documents were provided immediately, it took until late December for all of the documents to be provided.

27. Relevant for purposes of this lawsuit, JLL (acting on behalf of RCS State Line) provided the following documents in late December 2021:

   a. A report from Engineering Diagnostics dated December 23, 2019 which provided information regarding the condition of the parking garage and noted that several repairs were needed to the parking garage to "preserve the garage's serviceability and structural integrity" (such as waterproofing)

SPR 18005132.1

and estimated that the cost to perform this work was between $675,000 and $820,000.

b. An appraisal dated February 21, 2020 which noted that the seller had provided RCS State Line[2] a $1.5 million credit on its purchase price for certain capital expenditures that needed to be performed on the parking garage with RCS State Line representing that this work would be performed within first six months of RCS State Line owning the Property.

c. A document titled "Actual Historical Capital Spend" which provided the amount of money spent by RCS Stateline and its predecessor on capital expenditures for the Property. This document indicated that the total spent since January 22, 2020, was $730,861, with only minimal sums spent on the parking garage and no sums spent on the waterproofing work that the Engineering Diagnostics report indicated was critical work that needed to be performed.

28. In reviewing these documents, Nazareth Enterprises found no evidence that the waterproofing had been performed or that $663,000 in parking garage repairs had been performed.

29. When Nazareth Enterprises inquired to JLL about this, JLL stated that the work performed in the 2019 Engineering Diagnostics report had been performed and would provide documentation showing this work had been performed.

30. Ultimately, however, JLL conceded that the work had not been performed and the prior representations (both before the Agreement was executed and during the due diligence process) were false.

---

[2] Upon information and belief, RCS Stateline purchased the Property in December 2019.

6

Electronically Filed - Jackson - Kansas City - December 27, 2022 - 05:22 PM

31. Based on this, Nazareth Enterprises told JLL that it needed a credit for the cost to perform the waterproofing work.

32. JLL stated that it would discuss this issue with RCS State Line, but did not get back to Nazareth Enterprises.

33. With the clock ticking on the 1031 Exchange and the closing of the 45-day contingency period, Nazareth had Engineering Diagnostics perform another inspection of the Property and parking garage.

34. This report was issued on January 21, 2022, and, similar to the December 2019 report, noted that waterproofing work had not been performed and was critical work that needed to be performed by the property owner to maintain the stability of the parking garage and prevent future corrosion to the parking garage that could impact its structural stability.

35. Also similar to the December 2019 report, Engineering Diagnostics noted that the cost to perform this waterproofing work was between $690,000 to $760,000.

36. Nazareth Enterprises also secured a bid from Western Specialty Contractors to perform this work for $691,270.

37. Based on this and RCS State Line's refusal to provide a credit to Nazareth Enterprises, on January 20, 2022, Tom Woods (acting as buyer's agent for Nazareth Enterprises on this deal) sent RCS State Line and JLL an offer to remove contingencies and proceed with the closing of the transaction if a credit of $691,270 was provided Nazareth Enterprises prior to January 25, 2022 (which was the expiration of the closing period).

38. Less than 24 hours before the end of the contingency period, Defendants offered a 50% credit.

39. This was rejected by Nazareth Enterprises.

Electronically Filed - Jackson - Kansas City - December 27, 2022 - 05:22 PM

40. On January 25, 2022, Nazareth Enterprises sent an e-mail that it was removing all contingencies to proceed with closing, but was reserving its right to sue and seek the $691,270 amount that should have been credited against their purchase price.

41. On or about February 2, 2022, Nazareth Enterprises assigned all rights and obligations under the Purchase Agreement to Nazareth State Line.

42. Plaintiffs satisfied all conditions precedent prior to bringing this action.

## COUNT I – NEGLIGENT MISREPRESENTATION

43. Plaintiffs incorporate by reference their allegations in the preceding paragraphs as if set forth fully herein.

44. During the course of this transaction Defendants (both directly and through JLL) provided information regarding the Property to Plaintiffs, and, specifically, that RCS State Line had performed over $600,000 in parking garage repairs and that certain waterproofing work had been performed.

45. The above information was material to the transaction.

46. This information was false as a result of the speakers' failure to exercise reasonable care as this work had not been performed.

47. Given the nature of the Property and Plaintiffs' obligations as landlord, this information was critical to the transaction and was offered by Defendants to guide Plaintiffs (and similarly situated parties) regarding the transaction and Defendants knew this information would be material to Plaintiffs in their evaluation and consideration of the deal.

48. Plaintiffs justifiably relied on this information in entering into the Purchase Agreement.

Electronically Filed - Jackson - Kansas City - December 27, 2022 - 05:22 PM

49. The Defendants all had a pecuniary interest in the transaction and a vested interest in ensuring the transaction was completed.

50. Due to Plaintiffs' reliance on this information, Plaintiffs suffered a pecuniary loss.

WHEREFORE, Plaintiffs requests that this Court enter judgment in its favor and against Defendants on Count I in amount that is fair and reasonable, pre- and post-judgment interest at the statutory rate, Plaintiffs' costs incurred herein, and any other and further relief which the court deems just and proper.

## COUNT II – FRAUDULENT MISREPRESENTATION

51. Plaintiffs incorporate by reference their allegations in the preceding paragraphs as if set forth fully herein.

52. As discussed above, Defendants (both directly and through JLL) made false, material representations that certain parking garage work had been performed, the amount of work that had been performed, and that there were minimal landlord responsibilities or obligations that needed to be incurred.

53. Defendants knew this information was false when it was made as the documents, invoicing, and inspection reports all pointed out that the work had not been performed and Defendants was aware of the landlord's need to perform parking garage waterproofing work in excess of $600,000 to maintain the structural stability of the parking lot.

54. Defendants clearly knew that Plaintiffs would rely on this in entering into the Purchase Agreement given the nature of the "net" lease with Burns & McDonnell and the landlord's capital expenditure obligations directly effecting the consideration that Plaintiffs would pay for the Property.

Electronically Filed - Jackson - Kansas City - December 27, 2022 - 05:22 PM

55. Plaintiffs were completely unaware of the falsity of these representations until after the Purchase Agreement was executed and they were "pregnant" in the deal with the potential serious financial ramifications from losing the 1031 Exchange.

56. Plaintiffs relied on the representations by Defendants that the parking garage work had been performed in entering into the Purchase Agreement.

57. It was reasonable for Plaintiffs to rely on this since they did not have access to any of the information Defendants had regarding the work performed on the Property until the Purchase Agreement was executed.

58. The Defendants all had a pecuniary interest in the transaction and a vested interest in ensuring the transaction was completed.

59. Plaintiffs have been damaged as a result of these actions which were proximately caused by Defendants' actions.

WHEREFORE, Plaintiffs requests that this Court enter judgment in its favor and against Defendants on Count II in amount that is fair and reasonable, pre- and post-judgment interest at the statutory rate, Plaintiffs' costs incurred herein, and any other and further relief which the court deems just and proper.

Respectfully submitted,

SPENCER FANE LLP

By: */s/ Thomas Hiatt*
Bryant T. Lamer, MO #57355
Thomas Hiatt, MO #68134
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 (facsimile)
blamer@spencerfane.com
thiatt@spencerfane.com

*Attorneys for Plaintiffs*

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

NAZARETH ENTERPRISES, INC.,

                                        PLAINTIFF(S),                  CASE NO. 2316-CV00641

VS.                                                                     DIVISION 14

RCS - STATE LINE, LLC,

                                        DEFENDANT(S).

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
AND ORDER FOR MEDIATION**
_____

       NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JOHN M. TORRENCE** on **19-APR-2023** in **DIVISION 14** at **09:00 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

       A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

       At the Case Management Conference, counsel should be prepared to address at least the following:

      a.     A trial setting;

      b.     Expert Witness Disclosure Cutoff Date;

      c.     A schedule for the orderly preparation of the case for trial;

      d.     Any issues which require input or action by the Court;

      e.     The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ **JOHN M. TORRENCE**
JOHN M. TORRENCE**, Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
BRYANT T LAMER, SPENCER FANE BRITT & BROWNE, 1000 WALNUT STREET, SUITE 1400, KANSAS CITY, MO 64106

THOMAS SCOTT HIATT, 1000 WALNUT STREET, SUITE 1400, KANSAS CITY, MO 64106

Defendant(s):
RCS - STATE LINE, LLC
JONES LANG LASALLE AMERICAS, INC.
JONES LANG LASALLE BROKERAGE, INC.

Dated: 10-JAN-2023

MARY A. MARQUEZ
Court Administrator